UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

INSIGHT KENTUCKY PARTNERS II, L.P.                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 3:16-cv-00625-CRS

LOUISVILLE/JEFFERSON COUNTY METRO
GOVERNMENT and
LOUISVILLE METRO COUNCIL                                              DEFENDANTS

Memorandum Opinion

I.      Introduction

This matter is before the Court on the motion of Defendants Louisville/Jefferson County

Metro Government and Louisville Metro Council (collectively, "Defendants") to dismiss the

claims under Federal Rule of Civil Procedure 12(b)(6), ECF No. 18. Plaintiff Insight Kentucky

Partners II, L.P. ("Insight") responded, ECF No. 23. Defendants replied, ECF No. 24. For the

reasons explained below, the Court will grant in part and deny in part Defendants' motion to

dismiss.

II.     Allegations in the Complaint

Wireline video providers use facilities placed in public rights-of-way to provide video

programming to their customers. Compl. ¶ 9, ECF No. 1. These providers run wires and cables,

including fiber optic wires, from central locations to their customers' businesses and residences.

*Id.* ¶ 10. Most of the wires and cables are hung aerially on existing utility poles along the public

rights-of-way. *Id.*

A.      Insight and the Louisville Metro Council Regulations

Insight is a wireline video provider operating in Louisville, Kentucky. *Id.* ¶ 9. Insight and

its predecessor entities have been providing customers in the area with services for decades. *Id.* ¶

1

15. Louisville Metro Council regulates Insight as a "Cable Communications System." *Id*. ¶ 17. The regulations placed on Insight are apparently costly and concern "extension of service requirements, customer service obligations, privacy regulations, performance measurements, interconnection requirements with other similar networks, rate regulation, requirements regarding street occupancy, reporting requirements, handling complaints, and the requirement to obtain a franchise from Louisville Metro." *Id*. ¶¶ 19, 20. For example, the regulations require Insight to maintain a repair and maintenance service that is capable of responding to customer complaints or requests within twenty-four hours and to provide Louisville Metro Council with the results of system performance measurement tests. *Id*. ¶ 37. Insight must also maintain service logs and follow a preventive maintenance program. *Id*.

Regarding the franchise requirement, Insight has operated under a franchise agreement with Louisville Metro Council since May 31, 1998. *Id*. ¶ 21. In 2010, the franchise agreement expired. *Id*. Insight initiated timely renewal negotiations under the Federal Cable Act. *Id*. In 2012 and 2015, Insight entered into settlement agreements with Louisville Metro Council. *Id*. ¶ 21 n.1. These agreements confirmed that the 1998 franchise agreement was still in effect. *Id*.

B.    AT&T and the Louisville Metro Council Regulations

BellSouth Telecommunications, LLC (AT&T) is another wireline video provider operating in Louisville. *Id*. ¶ 9. Unlike with Insight, Louisville Metro Council does not regulate AT&T as a "Cable Communications System." *Id*. ¶ 24. According to Insight, AT&T takes the position that it operates under a historic state-issued telecommunications franchise and does not require a separate video franchise to operate in Louisville. *Id*. Thus, AT&T apparently is not subject to the regulations placed on Insight, nor is it required to obtain a franchise from Louisville Metro Council. *Id*.

2

C.       Google and the Louisville Metro Council Regulations

Google Fiber Kentucky, LLC ("Google") has applied for and been granted authority by Louisville Metro Council to become a wireline video provider in the city and surrounding area, and plans to construct its own wireline video network. *Id*. ¶ 9. When Google has finished constructing its wireline video network, it will compete with AT&T and Insight in providing video services to customers in Louisville. *Id*. ¶¶ 11–14.

Unlike with Insight, Louisville Metro Council does not plan to regulate Google as a "Cable Communications System." *Id*. ¶ 27. Instead, Louisville Metro Council will treat Google as a "Communications Service" provider and will subject it to minimal regulations. *Id*.

In February 2016, Louisville Metro Council approved an "Interlocal Cooperation Agreement" with the Jefferson County, Kentucky municipalities that possess franchise authority. *Id*. ¶ 29. The agreement authorizes Louisville Metro Council to advertise and process bids for a single, standard franchise agreement for communication infrastructure service providers seeking to serve the Louisville Metro area and municipalities in Jefferson County (a "Uniform Franchise"). *Id*.

In June 2016, Louisville Metro Council awarded Google a Uniform Franchise. *Id*. ¶ 30. The Uniform Franchise requires Google to comply with applicable requirements in the Louisville Metro Public Works & Assets Utility Policy and with Louisville Metro Council's permitting and inspection requirements related to working in the public right-of-way. *Id*. ¶ 31. The Uniform Franchise also requires Google to pay a "Communications Franchise Fee" in an amount not to exceed $50,000.00, if state law were changed to permit such a fee. *Id*. Overall, Insight asserts that the Uniform Franchise agreement and the Louisville Metro Code regulations placed on

Google will be less burdensome than those that Louisville Metro Council has placed on it. *Id*. ¶ 37.

D.    Insight's Request to Decrease Regulations and the Louisville Metro Council's Adoption of the One-Touch Ordinance

In June 2016, Insight sent Louisville Metro Council a letter seeking regulatory treatment similar to the regulations that it will apparently place on Google. *Id*. ¶ 43. In July 2016, after Louisville Metro had awarded Google a Uniform Franchise, Insight sent another letter that again sought regulatory treatment similar to the regulations that will be placed on Google. *Id*. ¶ 44. In August 2016, Louisville Metro Council declined Insight's requests. *Id*. ¶ 46.

A few months before Insight sought similar regulatory treatment, in February 2016, Louisville Metro Council adopted the One-Touch Ordinance. *Id*. ¶ 59. The One-Touch Ordinance allows a communications service provider seeking to make a new utility pole attachment to relocate or alter the attachments or facilities of any preexisting third-party user to accommodate its own approved attachments. *Id*. ¶ 60. The communications service provider must use the owner of the utility pole's approved contractors. *Id*. The One-Touch Ordinance does not require the communications service provider to notify the preexisting third-party of its intent to relocate or alter the attachments, unless the relocation or alteration would cause a customer outage. *Id*. ¶ 61. If the communications service provider has not provided advance notice of its intent to relocate or alter an attachment, it must notify the preexisting third-party about any relocation or alteration within 30 days after performing the work. *Id*. ¶ 62. The preexisting third-party then has 14 days to inspect the work to make any claim of damages or other complaints. *Id*.

E.    Insight's Claims against Defendants

In September 2016, Insight filed suit against Defendants. Compl. 1, ECF No. 1. Insight asserts six claims. First, Insight claims under 42 U.S.C. § 1983 that Defendants' preferential

treatment of AT&T and Google infringed on its ability to engage in and transmit speech, which violated the First and Fourteenth Amendments to the United States Constitution and Section 8 of the Kentucky Constitution (Count I). *Id.* ¶¶ 71–86. Second, Insight asserts under 42 U.S.C. § 1983 that Defendants' preferential treatment of AT&T and Google denied it equal protection of the law, which violated the First and Fourteenth Amendments to the United States Constitution and Section 2 of the Kentucky Constitution (Count II). *Id.* ¶¶ 87–105. Third, Insight asserts that Kentucky law granting the Public Service Commission exclusive authority to regulate utility pole attachments preempts Louisville's One-Touch Ordinance (Count III). *Id.* ¶¶ 106–15. Fourth, Insight claims under 42 U.S.C. § 1983 that the One-Touch Ordinance constitutes an unlawful taking of its property, which violates the Fifth and Fourteenth Amendments to the United States Constitution and Section 13 of the Kentucky Constitution (Count IV). *Id.* ¶¶ 116–24. Fifth, Insight also seeks declaratory relief and an award of attorney fees under 42 U.S.C. §§ 1983 and 1988 to remedy the alleged constitutional violations (Count V). *Id.* ¶¶ 125–32. Sixth, Insight seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 to determine the respective rights of the parties (Count VI). *Id.* ¶¶ 133–36.

III.   Discussion

Defendants now move to dismiss Counts I through V under Federal Rule of Civil Procedure 12(b)(6).[1] Rule 12(b)(6) provides that a party may move to dismiss a cause of action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 55 U.S. 544, 570 (2007). A complaint states a plausible claim for relief when

---

[1] Defendants do not address Count VI. They note, however, in their memorandum in support of their motion to dismiss that "Counts V and VI of the Complaint merely repeat the allegations of the first four counts and seek attorneys' fees under 42 U.S.C. § 1988, and declaratory relief under 28 U.S.C. §§ 2201 and 2202." Mem. Supp. Mot. Dismiss 2, ECF No. 18-1.

the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court is not required to accept legal conclusions or "threadbare recitals of the elements of a cause of action." *Id*. When resolving a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015) (quoting *Directv, Inc. v. Treesch*, 487 F.3d 471, 476 (6th Cir. 2007)).

Defendants argue that the Court should dismiss Counts I and II because Insight waived its right to assert violations of the right to free speech and equal protection when it entered into settlement agreements with Louisville Metro Council in 2012 and 2015 and because any claim based on comparisons to Louisville Metro Council's treatment of Google is not yet ripe. Mem. Supp. Mot. Dismiss 5–13, ECF No. 18-1. Defendants argue that Count III should be dismissed because Louisville's One-Touch Ordinance is not preempted by Kentucky law. *Id*. at 13–16. Defendants maintain that the Court should dismiss Count IV because Louisville Metro Council's One-Touch Ordinance does not constitute an unlawful taking of property. *Id*. at 16–20. Defendants finally argue that Count V should be dismissed because the declaratory relief is unavailable for reasons found in their arguments related to Counts I, II, and IV and because 47 U.S.C. § 555a bars Insight's request for attorney fees as a matter of law. *Id*. at 20–22.

A.    Whether Counts I and II Should Be Dismissed

As noted above, Insights asserts in Count I that Defendants' preferential treatment of AT&T and Google infringed on its free speech rights under the First and Fourteenth Amendments to the United States Constitution and Section 8 of the Kentucky Constitution. Compl. ¶¶ 71–86, ECF No. 1. Insight also contends in Count II that this preferential treatment

denied it equal protection of the law, which violated the First and Fourteenth Amendments to the United States Constitution and Section 2 of the Kentucky Constitution. *Id.* ¶¶ 87–105. Defendants argue that the Court should dismiss Count I and Count II because Insight waived its free speech and equal protection rights and because, to the extent that the claims are based on comparisons to Louisville Metro's treatment of Google, they are not yet ripe. Mem. Supp. Mot. Dismiss 5–13, 6 n.6, ECF No. 18-1.

*i. Whether Insight Waived its Free Speech and Equal Protection Rights*

An initial matter regarding Defendants' waiver argument that this Court must address is whether waiver may be asserted in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Insight contends that waiver is an affirmative defense and thus is improperly asserted on a Rule 12(b)(6) motion to dismiss. Resp. Opp. Mot. Dismiss 10–12, ECF No. 23. Defendants reply that the "Sixth Circuit has repeatedly held a motion to dismiss may be granted on the basis of a conclusively established affirmative defense." Reply 2–3, ECF No. 24.

Waiver is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1) (listing affirmative defenses). A motion to dismiss may be granted based on an affirmative defense when "the facts conclusively establish the defense as a matter of law." *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 412 (6th Cir. 2013) (citing *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). Thus, Defendants may properly assert waiver in their motion to dismiss.

Turning to the merits of Defendants' waiver argument, Defendants explain that Insight was aware of their allegedly more favorable treatment of AT&T when entering into settlement agreements with Louisville Metro Council in 2012 and 2015; therefore, Defendants maintain, Insight waived any freedom of speech or equal protection claims that allegedly arise out of their

7

unequal treatment of AT&T. Mem. Supp. Mot. Dismiss 8–11, ECF No. 18-1. Defendants further assert that Insight waived its free speech and equal protection rights by accepting the application of the 1998 Franchise Agreement and Louisville Metro Code in the 2012 and 2015 settlement agreements. *Id.* at 12–13. The 1998 Franchise Agreement included provisions acknowledging that Insight was subject to local law, including § 116.49 of the Louisville Metro Code. *Id.* This portion of the Louisville Metro Code provides that a franchisee will not challenge a franchise as "unreasonable, arbitrary, voidable or void." *Id.*

Insight argues in opposition that it never waived its right to assert a freedom of speech or equal protection claim. Resp. Opp. Mot. Dismiss 12–15, ECF No. 23. Insight notes that the settlement agreements with Louisville Metro Council from 2012 and 2015 expressly provide that it does not waive any rights held under applicable law. *Id.* at 12. Insight also clarifies that it is not challenging the franchise as "unreasonable, arbitrary, voidable, or void," and thus § 116.49 of the Louisville Metro Code does not apply to this case. *Id.* at 13. And regardless, Insight did not waive any constitutional rights in agreeing to abide by § 116.49 of the Louisville Metro Code. *Id.* at 13.

Constitutional rights may be contractually waived when "the facts and circumstances surrounding the waiver make it clear that the party foregoing its rights has done so of its own volition, with full understanding of the consequences of its waiver." *Henley v. Cuyahoga Cty. Bd. of Mental Retardation & Developmental Disabilities*, 141 F. App'x 437, 446 (6th Cir. 2005) (citing *Erie Telecomms., Inc. v. City of Erie*, 853 F.2d 1084, 1096 (3d Cir. 1988)). Waiver must be "voluntary, knowing, and intelligent," depending on the "particular facts and circumstances surrounding that case, including the background, experience and conduct of the waiving party."

*Erie Telecomms.*, 853 F.2d at 1094 (internal citations omitted). Waiver must be established by "clear and compelling evidence." *Id*. (internal citations omitted).

The Supreme Court analyzed the contractual waiver of a constitutional right in *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972) and in *Fuentes v. Shevin*, 407 U.S. 67 (1972). In *D.H. Overmyer*, the defendant contracted with the plaintiff to have a refrigeration system placed in a warehouse. 405 U.S. at 176. The defendant fell behind on its payments for the refrigeration system. *Id*. The defendant negotiated with the plaintiff regarding the delayed payments. *Id*. at 180. It eventually executed a note containing a judgment clause that waived service of process and allowed the plaintiff to confess a judgment against it. *Id*. at 180–81. When the defendant still failed to pay for the refrigeration system, the plaintiff's attorney filed suit against the defendant and caused judgment to be entered against the defendant under the note. *Id*. at 181. The defendant appealed, asserting in relevant part that the judgment and the note violated its Constitutional right to due process. *Id*. at 184. The Supreme Court emphasized that due process rights are waivable and held that the defendant had knowingly, voluntarily, and intelligently waived its constitutional right to due process when it agreed to the confession of judgment clause. *Id*. at 186–87.

In *Fuentes*, the plaintiff purchased a stove and stereo from the defendant under an installment contract. 407 U.S. at 70. The plaintiff retained title to the merchandise, but she was only entitled to possession if she timely paid the installment contract. *Id*. When she had paid all but $200.00 of the installment contract, the defendant filed suit in a small-claims court for repossession of the stove and stereo. *Id*. The clerk of the small claims court issued a writ of replevin, and a local deputy sheriff and one of the defendant's agents went to the plaintiff's home and seized the stereo and stove. *Id*. at 71. The plaintiff then sued the defendant and challenged

the state's replevin procedures under the Fourteenth Amendment due process clause. *Id*. On appeal, the Supreme Court addressed whether the plaintiff's signing of a conditional sales contract that provided that the defendant could take the merchandise if payment was defaulted waived her constitutional right to due process. *Id*. at 94. The Court found that the parties had not bargained over contractual terms and that the language of the contract was "no more than a statement of the seller's right to repossession upon occurrence of certain events." *Id*. at 95–96. Thus, the Court held that the contract did not waive the plaintiff's right to due process.

Taking all reasonable inferences in favor of Insight, Defendants have not established that Insight's purported knowledge of AT&T's allegedly more favorable contract with Louisville Metro Council constituted a knowing, voluntary, and intelligent waiver of its constitutional rights to free speech and equal protection. Further challenging Defendants' waiver argument is that neither the parties' 2012 settlement agreement nor their 2015 settlement agreement includes a waiver of Insight's freedom of speech and equal protection constitutional rights. *See* 2012 Settlement Agreement, ECF No. 18-2; 2015 Settlement Agreement, ECF No. 18-3. Moreover, the 2012 settlement agreement states, "Nothing herein shall constitute a waiver of any rights held by Insight or [Louisville Metro Council] under applicable law." 2012 Settlement Agreement 3, ECF No. 18-2. The 2015 settlement agreement likewise provides, "Nothing herein shall constitute an amendment or modification of the Franchise, or a waiver of any rights held by Franchisee or [Louisville Metro Council] under applicable law." 2015 Settlement Agreement 7, ECF No. 18-3.

Section 116.49 of the Louisville Metro Code similarly fails to support Defendants' waiver argument. Insight's 1998 Franchise Agreement, under which Insight continues to operate as agreed in the 2012 and 2015 settlement agreements, states that Insight will abide by the Cable

10

Act and "any other applicable provisions of federal, state, and local law." Franchise Agreement 26, ECF No. 1-2. Section 116.49 of the Louisville Metro Code states:

> By acceptance of any franchise hereunder a franchisee covenants and agrees that it will not at any time or in any manner or proceeding set up any term or condition of this chapter or of any ordinance or agreement awarding a franchise hereunder as unreasonable, arbitrary, voidable or void, or that the Metro Government had not the power or authority to make such term, or condition, but shall be required to accept the validity of same in their entirety.

Counts I and II do not challenge the 1998 Franchise Agreement as "unreasonable, arbitrary, voidable, or void"; instead, the claims challenge Louisville Metro's allegedly unequal treatment of Insight as compared to AT&T and Google. *See* Compl. ¶¶ 71–105, ECF No. 1. And § 116.49 appears not to waive Insight's right to assert constitutional claims against Louisville Metro Council for violations of its constitutional rights.

In sum, Defendants' argument that Counts I and II should be dismissed because Insight waived its right to assert freedom of speech and equal protection claims is unavailing.

> ii. *Whether Insight's Claims Based on Comparisons to Louisville Metro's Treatment of Google are Ripe.*

Defendants explain that because Insight has not specifically alleged that Google accepted the offered Uniform Franchise agreement, deployed any facilities in Louisville's right-of-way, or offered any competing services to customers in Louisville, Insight cannot yet show any freedom of speech or equal protection injury as related to Google. Mem. Supp. Mot. Dismiss 6 n.6, ECF No. 18-1. Insight contends in opposition that Defendants' ripeness argument is not properly addressed in a motion to dismiss and, regardless, it "challenges Defendants' decision not to treat it substantially similar to Google. That claim is ripe for review now." Resp. Opp. Mot. Dismiss 15, ECF No. 23.

Under the doctrine of ripeness, "federal judicial power is to be exercised . . . only at the instance of who is himself immediately harmed, or immediately threatened with harm, by the challenged action." *Poe v. Ullman*, 367 U.S. 497, 504 (1961). A plaintiff, however, need not "await the consummation of threatened injury to obtain preventive relief." *Blum v. Yaretsky*, 457 U.S. 991, 1000 (1982) (quoting *Penn. v. W.V.*, 262 U.S. 553, 593 (1923)). "[The] question becomes whether any perceived threat to respondents is sufficiently real and immediate to show an existing controversy." *Id*. (citing *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)).

Here, given the allegations in the complaint, the constitutional claims asserted in Counts I and II are ripe for review. According to the complaint, Louisville Metro has already declined to place Insight under the same regulatory scheme as Google, thereby leading to Insight's constitutional claims. *See e.g.*, Compl. ¶ 46, ECF No. 1 (explaining that Louisville Metro wrote Insight a letter declining Insight's requests to be treated under the same regulatory scheme as Google). Furthermore, the perceived threat to Insight arising from Defendants' different regulatory treatment is sufficiently real and immediate; Insight does not need to wait until Google completes its wireline network to bring its constitutional claims. Thus, Defendants' argument that Insight's constitutional claims involving Google are not ripe is unavailing.

B.    Whether Count III Should Be Dismissed

Count III asserts that Kentucky law granting the state's Public Service Commission exclusive authority to regulate utility pole attachments preempts Louisville's One-Touch Ordinance.[2] *Id*. ¶¶ 106–15. The relevant state law, Kentucky Revised Statute § 278.040, provides:

---

[2] The One-Touch Ordinance provides, "Upon approval of an Attachment Application, Attacher may relocate or alter the attachments or facilities of any Pre-Existing Third Party User as may be necessary to accommodate [its] Attachment." Ordinance No. 021 at 4, ECF No. 1-7. Insight

> The commission shall have exclusive jurisdiction over the regulation of rates and service of utilities, but with that exception nothing in this chapter is intended to limit or restrict the police jurisdiction, contract rights or powers of cities or political subdivisions.

Ky. Rev. Stat. Ann. § 278.040(2).

The parties' dispute concerning Count III's dismissal centers on whether Louisville Metro's One-Touch Ordinance concerns the "regulation of . . . services of utilities," as set out in Kentucky Revised Statute § 278.040, or falls within the municipality's general police power. Defendants argue that the One-Touch Ordinance "falls within Louisville Metro's police power to manage its rights-of-way and therefore falls outside of the exclusive jurisdiction of the [Public Service Commission]."[3] Mem. Supp. Mot. Dismiss 13–16, ECF No. 18-1. Insight argues in opposition that the One-Touch Ordinance concerns the movement and relocation of utility pole attachments, which the Public Service Commission regulates as a service of a utility. Resp. Opp. Mot. Dismiss 16–18, ECF No. 23.

Kentucky Revised Statute § 278.010(13) defines "service" of a utility as:

> any practice or requirement in any way relating to the service of any utility, including the voltage of electricity, the heat units and pressure of gas, the purity, pressure, and quantity of water, and in general the quality, quantity, and pressure of any commodity or product used or to be used for or in connection with the business of any utility, but does not include Voice over Internet Protocol (VoIP) service.

---

alleges that the One-Touch Ordinance was "designed to reduce Google's costs of constructing its network and speed time to market for delivery of its services to the subscribing public." Compl. ¶ 47, ECF No. 1.

[3] In support of their motion to dismiss Count III, Defendants cite to materials that are not referenced in Insight's claims. *See, e.g.*, Mem. Supp. Mot. Dismiss 4 n.3–5, ECF No. 18-1; *id.* at 14 n.14 (providing background information about the development of the One-Touch Ordinance). As these materials are not cited in the complaint and are not central to Insight's claims, the Court did not consider them in ruling on Defendants' motion to dismiss. *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

Kentucky case law interpreting the definition of a "service" in the context of Kentucky Revised Statute § 278.040 is limited. One applicable case is *Benzinger v. Union Light, Heat & Power*. 293 Ky. 747, 748 (Ky. 1943). In *Benzinger*, the City of Covington enacted an ordinance requiring utility companies to place their wires underground and to remove all utility poles from the streets. *Id*. at 748. An electric company filed suit against Covington, alleging that the ordinance to place wires underground infringed on the Public Service Commission's exclusive jurisdiction over the service of utilities. *Id*. at 748–49. The Kentucky Court of Appeals determined that the legislature's use of the word "service" was intended to apply only to the "quality" and "quantity" of utility products. Thus, because Covington's underground wire ordinance did not concern the quality or quantity of electric services, it did not fall within the exclusive jurisdiction of the Public Service Commission and instead was enacted under the municipality's general police power. *Id*. at 754.

*Kentucky CATV Association v. Volz* is another, more recent Kentucky case relevant to determining the definition of "service" in the context of Kentucky Revised Statute § 278.040. 675 S.W.2d 393 (Ky. Ct. App. 1983). In *Volz*, the Public Service Commission determined that it had jurisdiction to regulate utility pole attachment agreements between cable television operators and utility companies. *Id*. at 396. Plaintiffs, a collection of several cable companies, appealed the decision and argued that the Public Service Commission did not have authority to regulate contracts between private television operators and utility companies. *Id*. The Kentucky Court of Appeals noted that a utility pole is "an essential part of the facilities of most regulated utilities." *Id*. at 396. The appellate court then explained that in allowing cable television operators to attach their cables to unused space on a utility pole, the utilities were providing a "service" as defined by Kentucky Revised Statute § 278.010(13). *Id*. at 396. The court noted that the definition of a

14

"service" is broad: it "not only includes the basic services for which a utility is created, but is also includes any service which arises from the use of a utility's facilities, such as its poles." *Id*. Therefore, the court determined that services generated by utility pole attachment agreements fall within the exclusive jurisdiction of the Public Service Commission. *Id*.

Given the Kentucky Court of Appeal's decision in *Volz*, the definition of "service" as used in Kentucky Revised Statute § 278.040 is broad. The activity of moving utility pole attachments, which the One-Touch Ordinance purports to regulate, plausibly falls within this definition. Therefore, Defendants' argument that the One-Touch Ordinance is not preempted by Kentucky law fails, and the Court will deny their motion to dismiss Count III.

C.    Whether Count IV Should Be Dismissed

Count IV alleges that Louisville Metro's One-Touch Ordinance is an unlawful taking of property in violation of the Takings Clause of the Fifth Amendment to the United States Constitution and Section 13 of the Constitution.[4] Compl. ¶¶ 116–24, ECF No. 1. Defendants first contend that Count IV should be dismissed because Insight has no property interest in a particular location on a utility pole. Mem. Supp. Mot. Dismiss 16–17, ECF No. 18-1. Insight maintains that it has identified a legally cognizable property right in the operation and maintenance of its existing cable network. Resp. Opp. Mot. Dismiss 19, ECF No. 23.

Property rights in a "physical thing have been described as the rights 'to possess, use and dispose of it.'" *Loretto v. Teleprompter Manhattan Catv Corp.*, 458 U.S. 419, 435 (1982) (citing *United States v. General Motors Corp.*, 323 U.S. 373, 378 (1945)). In this case, Insight alleges a property interest greater than the right to a particular location on a utility pole; instead, it has alleged that it has "a "vested property interest in its physical network in Louisville, including its

---

[4] The Takings Clause of the Fifth Amendment and Section 13 of the Kentucky Constitution prohibit the government from taking private property for public use without just compensation.

wires, equipment, and other facilities attached to utility poles in Louisville." Compl. ¶ 119, ECF No. 1. Given this allegation, Defendants have not met their burden of showing that Insight failed to identify in its complaint a cognizable property interest.

Defendants secondly argue that Count IV should be dismissed because any touching of its wires that may be authorized by Louisville's One-Touch Regulation is temporary and does not deprive Insight of any beneficial use of its facilities. Mem. Supp. Mot. Dismiss 17–19, ECF No. 18-1. Insight argues, however, that Defendants' argument turns on a fact issue and thus is inappropriate for resolution on a Rule 12 motion and that it properly alleges a takings claim. Resp. Opp. Mot. Dismiss 21–24, ECF No. 23.

Whether a government action is a taking is fact dependent. *Ark. Game & Fish Comm'n v. United States*, 133 S. Ct. 511, 518 (2012). A regulatory taking occurs when a government regulation "'goes too far' in restricting a property owner's use of their property." *Tenn. Scrap Recyclers Ass'n v. Bredesen*, 556 F.3d 442, 455 (6th Cir. 2009). When the regulation does not render the property valueless, a court uses a balancing test found in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978). *Id*. The balancing test requires the court to look at "[t]he economic impact of the regulation on the claimant," "the extent to which the regulation has interfered with distinct investment-backed expectations," and "the character of the governmental action" to determine whether a regulatory taking has occurred. *Penn Central Transp. Co.*, 438 U.S. at 124.

Here, taking all reasonable inferences in favor of Insight, Insight has sufficiently pleaded that the One-Touch Ordinance constitutes a regulatory taking. Insight asserts that the One-Touch Ordinance "constitutes an unlawful taking of [its] property, by the state action of a municipal ordinance that allows a competitor repeatedly to trespass upon, take possession of, move and

16

potentially damage its facilities, for a private use." Compl. ¶ 121, ECF No. 1. Insight also claims

that the One-Touch Ordinance allows Google "to repeatedly handle, move, interfere with, and

potentially damage [its] wires, equipment, and other facilities attached to utility poles in the

right-of-way, which threatens to destroy Insight's investment in and ability to use its facilities to

provide service for its customers." *Id.* ¶ 122. These allegations plausibly suggest that the One-

Touch Ordinance could have severe economic impacts on Insight, could disrupt its investment-

backed expectations, and would be an intrusive government action. As such, Defendants'

argument that Count IV should be dismissed because of the temporary effect of the One-Touch

Ordinance fails at this time.

        D.      Whether Count V Should Be Dismissed

      Count V seeks declaratory relief and an award of attorney fees under 42 U.S.C. §§ 1983

and 1988 to remedy the alleged constitutional violations. Compl. ¶¶ 125–32, ECF No. 1.

Defendants first argue that Insight's request for declaratory relief in Count V should be

dismissed for "the reasons set forth" in their discussion of Counts I, II, and IV. Mem. Supp. Mot.

Dismiss 20, ECF No. 18-1. Insight asserts that it has alleged cognizable constitutional claims and

thus Defendants' motion to dismiss its request for declaratory relief should be denied. Resp.

Opp. Mot. Dismiss 22, ECF No. 23.

      As explained above, Insight has plausibly pled its claims alleging violations of its

constitutional rights. The Court will accordingly deny Defendants' motion to dismiss Count V to

the extent that Insight seeks declaratory relief.

      Defendants also maintain that Insight's request for attorney fees under 42 U.S.C. § 1988

in Count V should be dismissed because it is barred by 47 U.S.C. § 555a. *Id.* at 20–22. Insight

asserts that it has alleged cognizable constitutional claims and that its claims are not barred by §

555a, which limits the relief a cable operator can obtain for a "claim," not a "proceeding." Resp.

Opp. Mot. Dismiss 22, ECF No. 23.

> Section 555a(a) provides:
>
> In any court proceeding . . . involving any claim against a franchising authority or other governmental entity . . . arising from the regulation of cable service or from a decision of approval or disapproval with respect to a grant, renewal, transfer, or amendment of a franchise, any relief, to the extent such relief is required by any other provision of Federal, State, or local law, shall be limited to injunctive relief and declaratory relief.

This court proceeding involves constitutional claims—Counts I, II, and IV—that are asserted against a franchising authority and that arise from the regulation of a cable service. Therefore, the relief in this case is limited to injunctive relief and declaratory relief; Insight's claim for attorney fees based on the alleged constitutional injuries is barred by § 555a. The Court will dismiss Count V to the extent it seeks attorney fees for failure to state a claim as a matter of law.

V.    Conclusion

The Court will grant in part and deny in part Defendants' motion to dismiss. The Court will grant Defendants' motion to dismiss regarding Count V to the extent that it seeks attorney fees. The Court will deny Defendants' motion to dismiss regarding Counts I, II, III, IV, and V to the extent that it seeks declaratory relief. Because Defendants appear not to have addressed Count VI in their motion to dismiss, memorandum in support of their motion to dismiss, or reply, this claim remains pending. An order will be entered in accordance with this memorandum opinion.

March 29, 2017

**Charles R. Simpson III, Senior Judge**
**United States District Court**

18